# EXHIBIT K

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANTS:**
***(AVISO AL DEMANDADO):***
SOUTHERN CALIFORNIA EDISON COMPANY, EDISON INTERNATIONAL, THE BOEING COMPANY, and DOES 1 THROUGH 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NOS. LSI 200432 and LSI 300125 as subrogees of Timothy and Joanna McPartlin and Makan Delrahim

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JAN 13 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By: Isaac Lovo, Deputy

FAXED COPY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡**AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles Superior Court
312 North Spring Street
Los Angeles, CA 90012

20STCV01317

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Paul J. Leeds, Esq. (SBN 214309) Maggie Schroedter, Esq. (SBN 270377) Jamie M. Ritterbeck, Esq. (SBN 186151)
Higgs Fletcher & Mack, LLP
401 West A Street, Suite 2600
San Diego, CA 92101 Tel: (619) 236-1551 / Fax: (619) 696-1410

DATE: *(Fecha)* JAN 13 2020 SHERRI R. CARTER Clerk, by *(Secretario)* Isaac Lovo , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: THE BOEING COMPANY
under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other *(specify)*: BUSINESS ENTITY FORM UNKNOWN
4. ☐ by personal delivery on *(date)*:



| SHORT TITLE: Certain Underwriters at Lloyd's, London sub. to Pol. Nos. LSI 200432 and LSI 300125 a/s/o Timothy McPartlin et al. v. Southern California Edison Company et al. | CASE NUMBER 20STCV01317 |
|---|---|

COPY

FAXED

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

**Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Auto Tort | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

Local Rule 2.3
Page 1 of 4

Exhibit K, Page 775

| SHORT TITLE: Certain Underwriters at Lloyd's, London sub. to Pol. Nos. LSI 200432 and LSI 300125 a/s/o Timothy McPartlin et al. v. Southern California Edison Company et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3<br>1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1, 2, 3<br>10 |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2, 5<br>2, 5<br>1, 2, 5<br>1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case<br>☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11<br>5, 11<br>5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 5<br>1, 2, 3, 5<br>1, 2, 3, 8, 9 |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels_______ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6<br>2, 6<br>2, 6 |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: Certain Underwriters at Lloyd's, London sub. to Pol. Nos. LSI 200432 and LSI 300125 a/s/o Timothy McPartlin et al. v. Southern California Edison Company et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☑ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160 Abstract of Judgment | 2, 6 |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2, 8, 9 |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123 Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190 Election Contest | 2 |
| | | ☐ A6110 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100 Other Civil Petition | 2, 9 |

| SHORT TITLE: Certain Underwriters at Lloyd's, London sub. to Pol. Nos. LSI 200432 and LSI 300125 a/s/o Timothy McPartlin et al. v. Southern California Edison Company et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☑ 8. ☐ 9. ☐ 10. ☐ 11. | | | ADDRESS: 2244 Walnut Grove Avenue |
|---|---|---|---|
| CITY: Rosemead | STATE: CA | ZIP CODE: 91770 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: January 13, 2020

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).
5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

Local Rule 2.3
Page 4 of 4

Exhibit K, Page 778

COPY

FAXED

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

Paul J Leeds, Esq.
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101

TELEPHONE NO.: (619) 236-1551 FAX NO.: (619) 696-1410

ATTORNEY FOR (Name): Certain Underwriters at Lloyd's, London subscribing to Policy Nos. LSI 200432 and LSI 300125 as subrogees of Timothy and Joanna McPartlin and Makan Delrahim

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JAN 13 2020

Sherri R. Carter, Executive Officer/Clerk of Court

By: Isaac Lovo, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

STREET ADDRESS:

MAILING ADDRESS: 312 North Spring Street

CITY AND ZIP CODE: Los Angeles, CA 90012

BRANCH NAME: Spring Street Courthouse

CASE NAME: Certain Underwriters at Lloyd's, London subscribing to Policy Nos. LSI 200432 and LSI 300125 as subrogees of Timothy and Joanna McPartlin and Makan Delrahim v Southern California Edison Company, Edison International, The Boeing Company and Does 1 through 50, Inclusive.

## CIVIL CASE COVER SHEET

[✓] **Unlimited** (Amount demanded exceeds $25,000)
[ ] **Limited** (Amount demanded is $25,000 or less)

**Complex Case Designation**

[ ] **Counter** [ ] **Joinder**

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 20STCV01317

JUDGE:

DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [✓] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [✓] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [✓] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify)*: (8) Inverse Condemnation; Negligece; Negligence Per Se; Violation of Health & Safety Code Sections 13007 & 13008; Violation of Public Utilities Code Section 2106; Trespass; Private Nuisance; Premises Liability.
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 1/13/20

Paul J. Leeds
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

[49]

Exhibit K, Page 779

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

Superior Court of California
County of Los Angeles

Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section

Consumer Attorneys
Association of Los Angeles

Southern California
Defense Counsel

abtl

Association of
Business Trial Lawyers

California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at ***www.lacourt.org*** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ________________ (INSERT DATE) for the complaint, and ________________ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

________________ (TYPE OR PRINT NAME) ➢ ________________ (ATTORNEY FOR PLAINTIFF)

Date:

________________ (TYPE OR PRINT NAME) ➢ ________________ (ATTORNEY FOR DEFENDANT)

Date:

________________ (TYPE OR PRINT NAME) ➢ ________________ (ATTORNEY FOR DEFENDANT)

Date:

________________ (TYPE OR PRINT NAME) ➢ ________________ (ATTORNEY FOR DEFENDANT)

Date:

________________ (TYPE OR PRINT NAME) ➢ ________________ (ATTORNEY FOR ________________)

Date:

________________ (TYPE OR PRINT NAME) ➢ ________________ (ATTORNEY FOR ________________)

Date:

________________ (TYPE OR PRINT NAME) ➢ ________________ (ATTORNEY FOR ________________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – DISCOVERY RESOLUTION** | | CASE NUMBER: |

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

   It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

➢ ______________________ ______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

➢ ______________________ ______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢ ______________________ ______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢ ______________________ ______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢ ______________________ ______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________)

Date:

➢ ______________________ ______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________)

Date:

➢ ______________________ ______________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | | CASE NUMBER: |

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _______________ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _______________ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Exhibit K, Page 787

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | | CASE NUMBER: |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)

**THE COURT SO ORDERS.**

Date: ____________________

JUDICIAL OFFICER



Superior Court of California, County of Los Angeles

# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR information Package on any new parties named to the action with the cross-complaint.

## What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

## Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control** with the parties: Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

## Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

## Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

- JAMS, Inc.: **Case Manager (213) 253-9776** mdawson@jamsadr.com
- Mediation Center of Los Angeles: **Case Manager: (833) 476-9145** info@mediationLA.org

**These organizations cannot accept every case and they may decline cases at their discretion.**
Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
NOTE: This service is not available for family law, probate or small claims.

b. **Los Angeles County Dispute Resolution Programs**
https://wdacs.lacounty.gov/programs/drp/

- Free, day- of- trial mediations at the courthouse for small claims, unlawful detainers (evictions) and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
- Free or low-cost mediations before the day of trial for these and other case types.
- For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the day of trial, visit http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: www.lacourt.org/division/civil/settlement

**Los Angeles Superior Court ADR website:** www.lacourt.org/division/civil/settlement
**For general information and videos about ADR, visit** http://www.courts.ca.gov/programs-adr.htm



COPY

FAXED

PAUL J. LEEDS, ESQ. (Bar No. 214309)
leedsp@higgslaw.com
MAGGIE SCHROEDTER (Bar No. 270377)
schroedterm@higgslaw.com
JAMIE M. RITTERBECK (Bar No. 286151)
ritterbeckj@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101-7913
TEL: 619.236.1551
FAX: 619.696.1410

Doug Skierski (*Pro hac* pending)
Kristin H. Jain (*Pro hac* pending)
Skierski Jain PLLC,
400 North Saint Paul Street, Suite 510
Dallas, Texas 75201
Phone: 214-446-0330
Facsimile: 214-446-0322
dskierski@skijain.com
khjain@skijain.com

Attorneys for Plaintiffs
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NOS. LSI 200432 and LSI 300125 as subrogees of Timothy and Joanna McPartlin and Makan Delrahim

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JAN 13 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By: Isaac Lovo, Deputy

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NOS. LSI 200432 and LSI 300125 as subrogees of Timothy and Joanna McPartlin and Makan Delrahim,

Plaintiffs,

v.

SOUTHERN CALIFORNIA EDISON COMPANY, EDISON INTERNATIONAL, THE BOEING COMPANY, and DOES 1 through 50, inclusive.

Defendants.

CASE NO. 20STCV01317

**COMPLAINT IN SUBROGATION FOR:**

**1. INVERSE CONDEMNATION;**
**2. NEGLIGENCE;**
**3. NEGLIGENCE *PER SE*;**
**4. VIOLATION OF HEALTH & SAFETY CODE § 13007 & 13008;**
**5. VIOLATION OF PUBLIC UTILITIES CODE § 2106;**
**6. TRESPASS;**
**7. PRIVATE NUISANCE;**
**8. PREMISES LIABILITY.**

**[DEMAND FOR JURY TRIAL]**

NOW COME Plaintiffs Certain Underwriters of Lloyd's, London ("Underwriters") Subscribing to Policy No. LSI 200432 (the "Policy"), as subrogees of Timothy and Joanna McPartlin (the "McPartlins") and Makan Delrahim ("Delrahim", collectively with the McPartlins, the "Insureds"), by and through their counsel, Higgs Fletcher Mack, LLP and Skierski Jain PLLC (*pro hac vice* admission to be sought), and hereby respectfully allege and state as follows:

**I.**

**PARTIES**

1. Underwriters are an unincorporated association of persons or entities in the business of subscribing to, underwriting, or issuing policies of insurance. Though the individual Underwriters subscribing to the Policy may be located throughout the world, including California, the lead Underwriter's principal place of business is in London, England. For the purpose of this action only, Underwriters may be contacted through Skierski Jain PLLC at 400 North Saint Paul Street, Suite 510, Dallas, Texas 75201.

2. Upon information and belief, at all times relevant to this action, Southern California Edison Company ("SoCal") was a business entity duly formed and authorized in California and has its principal place of business in Los Angeles, California. SCE is a utility company pursuant to §§ 218(a) and 216(1) of the California Public Utilities Code. SCE is in the business of providing electricity to the residents of Ventura and Los Angeles Counties through a network of electrical transmission and distribution lines, and infrastructure.

3. Upon information and belief, at all times relevant to this action, Edison International ("Edison", together with SoCal, "SCE") was a business entity duly formed and authorized in California and has its principal place of business in Los Angeles, California.

4. SCE were, at all times relevant to this Complaint, corporations authorized to do business and doing business in the State of California with their principal place of business in Los Angeles, California. Edison is an energy-based holding company headquartered in Rosemead, California. It is the parent company of SoCal. SCE provide public utility services, including the generation of electricity and the transmission and distribution of electricity and natural gas to millions of customers. SCE, at all times relevant to this Complaint, owned, and currently own,

operate, and maintain certain electrical transmission and distribution lines and are and were at all relevant times in the business of providing electricity in southern California, including in Los Angeles and Ventura Counties where the Insureds maintained their real and personal property. SCE is and was by law vested with authority to exercise, in the name of the aforesaid entity, the power to acquire property by eminent domain pursuant to the provisions of Public Utilities Code § 612 and CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP") §§ 1230.010, 1240.110, and 1240.120, et seq.

5. Underwriters allege that Edison and SoCal are jointly and severally liable for each other's wrongful acts and/or omissions as here after alleged, in that:

a. Edison and SoCal operate as a single business enterprise operating out of the same building for the purpose of effectuating and carrying out Edison's business and operations and/or for the benefit of Edison;

b. SoCal and Edison do not operate as completely separate entities, but rather, integrate their resources to achieve a common business purpose;

c. SoCal is so organized and controlled, and its decisions, affairs and business so conducted as to make it an instrumentality, agent, conduit and/or adjunct of Edison;

d. SoCal's and Edison's officers and management are intertwined and do not act completely independent of one another;

e. SoCal's income contributions result from its function, integration, centralization of management and economies of scale with Edison;

f. SoCal's and Edison's officers and managers act in the interest of Edison as a single enterprise;

g. Edison has control and authority to choose and appoint SoCal's board members as well as its other top officers and managers;

h. Despite both being electric companies and public utilities, SoCal and Edison do not compete with one another, but have been structured, organized, and their business is effectuated so as to create a synergistic, integrated single enterprise where various components operate in concert with one another;

i. Edison maintains unified administrative control over SoCal;

j. SoCal and Edison are insured by the same carriers and provide uniform or similar pension, health, life and disability insurance plans for employees;

k. SoCal and Edison have unified 401(k) Plans, pensions and investment plans, bonus programs, vacation policies in paid time off from work schedules and policies;

l. SoCal and Edison invest funds from their programs and plans by a consolidated and/or coordinated Benefits Committee controlled by Edison and administered by common trustees and administrators;

m. SoCal and Edison have unified personnel policies and practices and/or a consolidated personnel organization or structure;

n. SoCal and Edison have unified accounting policies and practices dictated by Edison and/or common or integrated accounting organizations or personnel;

o. SoCal and Edison are represented by common legal counsel;

p. Edison's officers, directors, and other management make policies and decisions to be effectuated by SoCal and/or otherwise play roles in providing directions and making decisions for SoCal;

q. Edison's officers, directors, and other management direct certain financial decisions for SoCal including the amount and nature of capital outlays;

r. Edison's written guidelines, policies, and procedures control SoCal, its employees, policies, and practices;

s. Edison files consolidated earnings statements factoring all revenue and losses from SoCal as well as consolidated tax returns, including those seeking tax relief; and/or, without limitation; and

t. Edison generally directs and controls SoCal's relationship with, requests to, and responses to inquiries from, the Public Utilities Commission and uses such direction and control for the benefit of Edison.

6. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants Doe 1 through 50, inclusive, are unknown to Underwriters, who

therefore sue said Defendants by such fictitious names pursuant to CCP § 474. Each of the fictitiously named Defendants is responsible in some manner for the conduct alleged herein, including, without limitation, by way of conspiracy, aiding, abetting, furnishing the means and/or acting in capacities that create agency, respondent superior, and/or predecessor- or successor-in-interest relationships with the Defendants. The Doe Defendants are private individuals, associations, partnerships, corporations, or other entities that actively assisted and participated in the negligent and wrongful conduct alleged herein in ways that are currently unknown to Underwriters. Some or all of the Doe Defendants may be residents of the State of California. Underwriters may amend or seek to amend this Complaint to allege the true names, capacities and responsibilities of these Doe Defendants once they are ascertained, and to add additional facts and legal theories. Underwriters make all allegations contained in this Complaint against all Defendants, including Does 1 through 50 who are not yet known, Underwriters sue said Defendants Does 1 through 50 by such fictitious names pursuant to CCP § 474.

7. The Boeing Company ("Boeing") was, at all times relevant to this Complaint, a Delaware Corporation registered to and doing business in the State of California. Boeing owns, operates, manages, controls, maintains, and is responsible for the Santa Susana Field Laboratory site ("SSFL") located in Ventura County where the Woolsey Fire originated. Boeing does business in the counties of Ventura and Los Angeles, California.

## II.

## JURISDICTION & VENUE

8. The Court exercises general subject matter jurisdiction in all civil matters.

9. The Court exercises general personal jurisdiction with respect to SCE, Boeing, and Does 1-50 (collectively, "Defendants") because each of the acts and omissions described herein occurred within Los Angeles County, California. Furthermore, SoCal, Edison, and Boeing are corporations which at all times relevant to this Complaint conducted business and have primary offices within Los Angeles County, California and/or do significant business in Los Angeles County. Moreover, the Southern California Fire Cases, JCCP 4965, is pending in this Court. The amount in controversy exceeds the jurisdictional minimum of this Court.

10. Venue is proper pursuant to CCP § 395 because (i) Defendants conducted and conduct business within Los Angeles County, California; and (ii) certain events giving rise to this action occurred within Los Angeles County, California. The venue is convenient to SCE and Boeing. Moreover, the Woolsey Fire cases are consolidated in Los Angeles County.

## III.

## STATEMENT OF MONETARY RELIEF SOUGHT

11. Underwriters seek only monetary relief in an amount no less than $2,481,971.15, plus penalties, costs, expenses, prejudgment interest, post-judgment interest and, if applicable, attorneys' fees.

## IV.

## CONDITIONS PRECEDENT

12. All conditions precedent to the filing of this Complaint or Underwriters' recovery have been satisfied.

## V.

## ANTICIPATED ADDITIONAL PLAINTIFFS AND COORDINATION HEARING

13. On information and belief, many lawsuits have been filed by parties in Los Angeles County Superior and Ventura County Superior Court. All pending suits will be part of a JCCP hearing.

## VI.

## SUMMARY

14. Pursuant to the Policy, Underwriters paid for damages caused to their Insureds arising from the destruction and/or damage to property caused by a fire that began at approximately 2:24 p.m. on November 8, 2018 near the Chatsworth Substation owned by SCE, located on property owned by Boeing, near Woolsey Canyon. This fire is commonly known as the "Woolsey Fire" (sometimes referred to as the "Fire"). No less than three people died in the Fire, which burned approximately 96,949 acres, destroying approximately 1,643 structures and prompting the evacuation of more than 295,000 people. The Fire impacted the lives of hundreds of thousands of residents in the Ventura and Los Angeles areas, including the Insureds.

15. SCE enjoys a monopoly which is allowed by law to provide power to consumers and commercial users within Los Angeles and Ventura Counties. As a monopoly, SCE is insulated from all competition within their area of operation, is guaranteed a rate of return on all of their capital—typically more than 300% the rate of return provided by United States Treasury Bonds—and is generally acknowledged to be one of the most lucrative investments on Earth. In exchange for their monopoly status and guaranteed rate of return, SCE has to do only two things in connection with the delivery of their product: (1) maintain their equipment in safe operating condition; and (2) ensure that their lines do not come into contact with each other, other parts of their infrastructure, and/or trees and vegetation. The Fire started because SCE failed to do either.

16. At all times relevant to this Complaint, Boeing owned, leased, operated, and/or was responsible for maintaining the SSFL, a 2,668-acre complex in Simi Valley, California. Boeing assumed the responsibility for protecting Plaintiffs and the Insureds from risks associated with the SSFL premises when it entered into, published, and induced reasonable reliance upon its Emergency Readiness Plan. "[Emergency preparedness and readiness at Santa Susana Field Laboratory (SSFL) is maintained at a level commensurate with the hazards." (Boeing 2008 SSFL, Area IV Emergency Readiness Assurance Plan (ERAP) BD02-399-05).

17. Prior to the outbreak of the Woolsey Fire, the risk of wildfire was or should have been well-known to Defendants and to others in the area of SSFL. Among other things, the vegetation and weather in the area was especially conducive to wildfire. Dense, dry vegetation was prominent in the area, and the Santa Ana winds were active. It is well known that the Santa Ana winds are especially conducive to wildfires, as the strong, dry, and warm winds are known to reduce humidity and moisture in soil and vegetation. The Santa Ana winds occur annually, making the risks they pose readily foreseeable. Moreover, at the time of the Woolsey Fire, Defendants were or should have been aware that the State of California was still recovering from its longest recorded drought, which lasted from 2011 to 2017. At all relevant times, many areas of the State remained in moderate to severe drought conditions, as was known or should have been known to Defendants.

18. On information and belief, the Woolsey Fire was caused by: (1) electrical infrastructure owned, designed, constructed, operated and maintained by SCE coming into contact

with vegetation inspected and maintained by SCE; (2) power lines owned, designed, constructed, operated and maintained by SCE coming into contact with one another causing a spark and resulting fire to the surrounding vegetation; and/or (3) the Defendants' negligent failure to maintain vegetation with prescribed California regulations and law concerning vegetation clearance from power lines and electrical infrastructure.

## VII.

## FACTUAL BACKGROUND

19. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained at paragraphs 1 through 18 above.

20. On November 6, 2018, days before the Woolsey Fire began, a Red Flag Warning was issued by the National Weather Service in Ventura County, the Los Angeles County Mountains and the San Fernando and Santa Clarita Valleys. The Santa Ana high winds in combination with dry vegetation due to the dry conditions in Southern California caused the Fire to quickly spread, causing widespread outages and evacuations in the Ventura and Los Angeles areas.

21. SCE was aware of the risk and chose to ignore the warning and not de-energize any of its electrical circuits in the surrounding areas prior to the fire.

22. The power lines and all associated electrical and distribution equipment (the "Power Lines") located in the areas of origin were, at all times relevant to this Complaint, owned, operated, controlled and/or maintained by SCE. The Power Lines were the origin of the Fire.

23. Upon information and belief, the Fire had one ignition on property owned by Boeing and another ignition on property owned by NASA. Both properties were located near the Chatsworth Substation. There was an electrical fault that is associated with an energized 16kV power line called the "Big Rock" circuit, and this fault was associated with other failures on the electrical facilities within a quarter mile. The fault is believed to be associated with a steel pole that carried transmission voltage and also had communication lines attached to it.

24. Boeing also knew of the wildfire risk in and around SSFL. The SSFL has been the affected by wildfires in the past, including in 2005. Boeing maintained and employed a private fire suppression unit due to these risks. However, after the Woolsey Fire began, and it came time to

protect the lives and property of others, public firefighters working to contain the blaze had little to no contact with Boeing's private fire suppression unit.

25. Moreover, Boeing had knowledge that the SSFL is and, at all relevant times, was severely contaminated due to multiple accidents with nuclear reactors, including the worst nuclear meltdown in US history, and years of rocket testing and other research conducted by Boeing and others. This increased the risk of and from wildfire on the property in a way that was well known to Boeing.

26. Boeing failed to, among other things, (a) take reasonable measures to prevent wildfires from starting due to equipment it allowed on its premises; (b) reasonably manage vegetation on its premises; (c) reasonably train, equip, and deploy its own fire suppression unit to combat wildfire that started on its premises; (d) allow outside fire suppression efforts reasonable access to its premises; and/or to (e) take other reasonable measures to reduce the risk of wildfire in the face of the high, foreseeable risk of wildfire on its premises.

27. Upon information and belief, certain parties aligned with Underwriters sought, but were unable to obtain, access from NASA or Boeing to conduct an inspection of the ignition sites, while SCE used its easement rights to gain access and alter the areas. By the time said parties were given legal access, among other things, there were new poles placed in Area of Origin 1 ("AOO1") on the Boeing property in place of old poles, new jumpers replaced older equipment and new dead-end insulators were installed. The second area of origin ("AOO2") is on property owned by NASA. By the time the parties seeking access were given access to AOO2, communication lines were cut and removed. Upon information and belief, the removed equipment is related to the ignition at AOO2.

28. On December 6, 2018, Edison, as required by law, sent a letter to the PUC outlining the facts it knew regarding the Woolsey Fire (the "Edison Letter"). The Edison Letter noted that the Fire started at 2:24 p.m., and that at 2:22 p.m. there was a disturbance on the Big Rock 16kV Circuit. The letter stated in relevant part:

> On November 8, 2018 at 2:22 p.m., under conditions of high winds and low humidity, with Red Flag Warning and System operating Bulletin 322 (reclosers in

manual) in effect, the Big Rock 16kV circuit ("16kV circuit") out of Chatsworth Substation relayed and was blocked from testing due to restraint on the recloser. VCFD and CAL FIRE initially restricted access to the property, but eventually permitted SCE limited access primarily for the purpose of cooperating with their investigation.

29. Edison further stated that SCE found a guy wire in the proximity to a jumper at a steel pole. The timing of the electrical disturbance and the Fire's ignition make it clear that the events are related and that the Fire was of electrical origin.

30. After the Fire ignited, fueled by the low humidity and the high winds, the Fire spread rapidly. Due to the Fire's rapid spread, properties and structures could not be protected and were destroyed.

31. The Policy provided Underwriters, *inter alia*, the ability to pursue the rights, claims, causes of action, and other remedies against all persons or entities who may be liable for any loss resulting from the disbursements, plus any costs, fees, interest or other amounts Underwriters may be awarded. A copy of the documents evidencing the disbursements are attached hereto as "**Exhibit 1 (McPartlins)**" and "**Exhibit 2 (Delrahim)**" and incorporated by reference.

32. Underwriters herein seek reimbursement only of the disbursements. Underwriters do not herein seek reimbursement of amounts paid to or on behalf of the Insureds by any entity pursuant to any insurance policy other than the Policy.

33. Underwriters assert the following claims, rights, remedies, and causes of action against Defendants cumulatively or in the alternative, whichever affords Underwriters the greatest recovery.

## VIII.

## FIRST CAUSE OF ACTION

**(Inverse Condemnation Pursuant to California Constitution Article I, Section 19, as to SCE and Does 1-50)**

34. Underwriters incorporate by reference as if fully stated herein each of the foregoing facts, statements, and allegations contained in paragraphs 1 through 33 above.

35. On or around November 8, 2018, the Insureds owned real and/or personal property located in areas burned by the Woolsey Fire.

36. Prior to and on November 8, 2018, one or more of the Defendants installed, owned, operated, used, controlled, and/or maintained Power Lines and other electrical equipment for the public delivery of electricity, including Power Lines in and around the location of the Woolsey Fire's ignition site(s).

37. On or around November 8, 2018, as a direct result of SCE and Does 1-50's design, installation, ownership, operation, use, control, management, and/or maintenance for a public use, the Power Lines and/or other electrical equipment broke, failed, fell, sparked, exploded, and/or came in contact with vegetation causing wildfires and a firestorm that burned thousands of acres, including property owned or occupied by the Insureds. The Woolsey fire damaged or destroyed the Insureds' real and/or personal property.

38. The above described damage to the Insureds' property was legally and substantially caused by SCE and Does 1-50's actions in designing, installing, owning, operating, using, controlling, managing, and/or maintaining the Power Lines and other electrical equipment for a public use. SCE is a privately-owned public utility, which enjoys a state-protected monopoly or quasi-monopoly, derived from its exclusive franchise provided by the State of California and is more akin to a governmental entity than a purely private entity, and runs its utility affairs like a governmental entity. SCE's monopoly is guaranteed and safeguarded by the PUC, which possesses the power to refuse to issue certificates of public convenience and necessity to permit potential competition to enter the market. The policy justifications underlying inverse condemnation liability are that individual property owners should not have to contribute disproportionately to the risks from public improvements made to benefit the community as a whole. Under the rules and regulations set forth by the PUC, amounts that Defendants must pay in inverse condemnation can be included in their rates and spread among the entire group of SCE's rate payers, so long as they are otherwise acting as a reasonable and prudent manager of their electric distribution systems.

///

///

39. The Insureds and Underwriters have not received adequate compensation for the damage to and/or destruction of their property, thus constituting a taking or damaging of the Insureds' property by Defendants without just compensation.

40. As a direct and legal result of Defendants' actions and/or omissions, the Insureds suffered damages to his or their real and/or personal property, including loss of use, business interruption, interference with access, and/or diminution in value and/or marketability totaling $2,481,971.15. As a result of said damages, Underwriters paid to the McPartlins no less than $2,398,600.00 (the "McPartlins Disbursement") and Delrahim no less than $83,371.15 (the "Delrahim Disbursement", collectively with the McPartlins Disbursement, the "Disbursements").

41. As a direct and legal result of Defendants' actions and/or omissions, Underwriters and the Insureds have incurred and will continue to incur costs, disbursements, and/or expenses, including reasonable attorney, appraisal, engineering, and/or other expert fees in amounts that cannot yet be ascertained, but which are recoverable pursuant to CCP § 1036.

42. Underwriters, as subrogees of the Insureds, hereby demand an award in the amount of no less than $2,481,971.15, plus all amounts recoverable pursuant to CCP § 1036.

**IX.**

**SECOND CAUSE OF ACTION**

**(Negligence, as to all Defendants)**

43. Underwriters incorporate by reference as if fully stated herein each of the foregoing facts, statements, and allegations contained in paragraphs 1 through 42 above.

44. Defendants, as owners and/or controllers of the Power Lines, were under a duty codified in California Civil Code § 1714(a), which states, in pertinent part:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

45. Specifically, Defendants had a duty to maintain the Power Lines in a reasonably safe condition. At all relevant times, Defendants operated, controlled, and/or maintained the Power Lines. At all times relevant, Defendants were required to own, design, control, possess, operate, install, construct, inspect, maintain, and manage the Power Lines, including the real estate, rights-of-way, easements, fixtures, conductors, devices, poles, conduits, apparatus, parts, and equipment in accordance with all standards, laws, rules, regulations, and orders pertaining thereto.

46. Defendants, in connection with the production, sale, transmission, and distribution of electricity, had a non-delegable duty, commensurate with and proportionate to the danger of transmitting power, to own, design, control, possess, construct, operate, install, inspect, maintain, and/or manage the Power Lines in a proper, reasonable, careful, and safe manner, including the real estate, rights-of-way, easements, fixtures, conductors, devices, poles, conduits, apparatus, parts, and equipment around, on, or near the subject Power Lines.

47. Defendants had a non-delegable duty to properly, reasonably, carefully, and safely maintain and inspect the Power Lines, in such a manner that they operate without any electrical faults, sparking, arcing, or other electrical failures.

48. Defendants have a non-delegable duty, to properly, reasonably, carefully, and safely maintain any real estate, rights-of-way, and/or easements near the Power Lines; and those duties included, but were not limited to keeping vegetation clear of the Power Lines an keeping the Power Lines free from trees, branches, twigs, bushes, and growth.

49. Defendants failed and neglected to perform and breached their duties described above in one or more of the following ways:

a. Failing to conduct reasonably prompt, proper, and frequent inspections of the Power Lines, wires, and associated equipment;

b. Failing to maintain the Power Lines, wires, and any and all associated equipment in a manner that avoids igniting fire during long, dry seasons by allowing those lines to withstand foreseeable conditions to avoid igniting fires;

c. Failing to maintain and monitor the Power Lines, wires, and any and all associated equipment in fire-prone areas to avoid igniting a fire and spreading fires;

    d. Failing to keep the Power Lines and any and all associated equipment in a safe condition at all times to prevent fires;

e. Failing to otherwise maintain and monitor the Power Lines and any and all associated equipment within this foreseeably fire-prone area to avoid igniting fires such as the Woolsey Fire;

f. Failing to design, construct, monitor, and maintain the Power Lines in a manner that avoids igniting fire during long, dry seasons by allowing those lines to withstand foreseeable conditions;

g. Failing to design, construct, operate, and maintain the Power Lines and associated equipment to withstand foreseeable conditions to avoid igniting fires;

h. Failing to install the equipment necessary, and/or to inspect and repair the equipment installed, to prevent the Power Lines from improperly sagging, operating, or making contact with trees or other vegetation;

i. Failing to keep the Power Lines and associated equipment in a safe condition at all times to prevent fires;

j. Failing to de-energize the Power Lines before the Woolsey Fire's ignition;

k. Failing to properly train and supervise employees and agents responsible for maintenance and inspection of the Power Lines; and

l. Failing to implement and follow regulation and reasonably prudent practices to avoid fire ignition.

50. Defendants' violation of the applicable standard of care as alleged herein proximately and substantially caused the Woolsey Fire, resulting in destruction, damage, and injury to the property of the Insureds in the amount of no less than $2,481,971.15.

51. As a result of the damages suffered by the Insureds and pursuant to the terms of the Policy, Underwriters made the Disbursements to the Insureds totaling no less than $2,481,971.15.

52. Underwriters, as subrogees of the Insureds, hereby demand an award in the amount of no less than $2,481,971.15.

///

X.

## THIRD CAUSE OF ACTION

**(Negligence *per se*, as to all Defendants)**

53. Underwriters incorporate by reference as if fully stated herein each of the foregoing facts, statements, and allegations contained in paragraphs 1 through 52 above.

54. SCE and Does 1-50, at all times relevant to this Complaint, had a duty to properly design, construct, operate, maintain, inspect, and manage SCE's electrical infrastructure as well as to trim trees and vegetation in compliance with all relevant provisions of applicable orders, decisions, directions, rules or statutes, including those delineated by, but not limited to, Public Utilities Commission General Order 95, Rules 31.2 and 38, Public Resources Code Section 4435, and Public Utilities Commission General Order 165.

55. Violating a legislative enactment or administrative regulation which defines a minimum standard of conduct is unreasonable *per se*.

56. SCE and Does 1-50, violated the above-enumerated enactments and regulations by acts and omissions including, but not limited to:

a. Failing to service, inspect or maintain electrical infrastructure, structures and vegetation affixed to and in close proximity to high voltage electrical lines;

b. Failing to provide electrical supply systems of suitable design;

c. Failing to construct and to maintain such systems for their intended use of safe transmission of electricity considering the known condition of the combination of the dry season and vegetation in the area, resulting in the Insureds being susceptible to the ignition and spread of fire and the fire hazard and danger of electricity and electrical transmission and distribution;

d. Failing to properly design, construct, operate, maintain, inspect and manage its electrical supply systems and the surrounding arid vegetation resulting in said vegetation igniting and accelerating the spread of the fire;

e. Failing to properly safeguard against the ignition of fire during the course and scope of employee work on behalf of SCE;

f. Failing to comply with the enumerated legislative enactments and administrative regulations.

57. The violation of General Order 95, including, but not limited to, Rules 31.2 and 38, Public Resources Code section 4435, and Public Utilities Commission General Order 165 by the Defendants proximately and substantially caused the destruction, damage and injury to the Insureds.

58. The Insureds were and are within the class of persons for whose protection General Order 95, including but not limited to Rules 31.2 and 38, Public Resources Code section 4435, and Public Utilities Commission General Order 165 were adopted.

59. Defendants are liable to the Insureds for all loss, damages and injury caused by and resulting from Defendants' violation of General Order 95, including, but not limited to Rules 31.2 and 38, Public Resources Code Section 4435, and Public Utilities Commission General Order 165.

60. As a result of the damage to the Insureds' property, Underwriters made the Disbursements totaling no less than $2,481,971.15.

61. Underwriters, as subrogees of the Insureds, hereby demand an award in the amount of no less than $2,481,971.15.

## XI.

## FOURTH CAUSE OF ACTION

**(Violation of Health & Safety Code §§ 13007 & 13008, as to all Defendants)**

62. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained in paragraphs 1 through 61 above.

63. California Health & Safety Code § 13007 states:

> Any person who personally or through another willfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property

64. California Health & Safety Code § 13008 provides:

> Any person who allows any fire burning upon his property to escape to the

> property of another, whether privately or publicly owned, without exercising due diligence to control such fire, is liable to the owner of such property for the damages to the property caused by the fire.

65. As a result of Defendants' actions, including but not limited to their negligence, violations of California Public Resource Code §§ 4292, 4293, and 4294, and violations of General Order 95, General Order 165, and/or California Health & Safety Code § 13001, the Woolsey Fire was set and/or allowed to be ignited and escaped to the Insureds' property, causing the damages to property alleged herein. Further, Defendants failed to exercise due diligence to control the Woolsey Fire, allowing it to escape their property and cause damage to the Insureds' property.

66. Pursuant to California Health & Safety Code § 13007, Defendants are jointly and severally liable for the property damage caused by the Woolsey Fire as alleged herein.

67. As a result of the damage to the Insureds' property, Underwriters made the Disbursements totaling no less than $2,481,971.15.

68. Underwriters, as subrogees of the Insureds, hereby demand an award in the amount of no less than $2,481,971.15.

## XII.

## FIFTH CAUSE OF ACTION

**(Violation of Public Utilities Code § 2106, as to SCE and Does 1-50)**

69. Underwriters incorporate by reference as if fully stated herein each of the foregoing facts, statements, and allegations contained in paragraphs 1 through 68 above.

70. As a utility, SCE and its employees are legally required to comply with the rules and orders promulgated by the California Public Utilities Commission pursuant to California Public Utilities Code § 702.

71. California Public Utilities Code § 2106 states, in pertinent part:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the

> persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

72. Pursuant to Public Utilities Code § 451, SCE is required to provide, maintain, and service equipment and facilities in a manner adequate to maintain the safety, health, and convenience of their customers and the public.

73. At all times herein mentioned, SCE is and was required to design, engineer, construct, operate, and maintain electrical supply lines in a manner consistent with their use, taking into consideration local conditions and other circumstances, so as to provide safe and adequate electric service pursuant to Public Utility Commission General Order 95, Rule 33.1 and General Order 165.

74. Through their omissions, commissions, and conduct alleged herein, SCE violated Public Utilities Code §§ 702 and 451 and/or Public Utilities Commission General Order 95, thereby making them liable for losses, damages, and injury sustained by the Insureds pursuant to Public Utilities Code § 2106.

75. As a result of the damage to the Insureds' property, Underwriters made the Disbursements to the Insureds totaling no less than $2,481,971.15.

76. Underwriters, as subrogees of the Insureds, hereby demand an award in the amount of no less than $2,481,971.15.

**XIII.**

**SIXTH CAUSE OF ACTION**

**(Trespass Pursuant to Civil Code § 3333 and CCP § 1021.9, as to all Defendants)**

77. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained in paragraphs 1 through 76 above.

///

78. At all relevant times herein, the Insureds was the owner, tenant, and/or lawful occupier of property damaged by the Woolsey Fire.

79. In causing the Woolsey Fire, Defendants, and each of them, negligently allowed the Fire to ignite and/or spread out of control, entering and causing injury to the Insureds' property.

80. The Insureds did not grant permission for SCE, Boeing, or Does 1-50 to cause or allow the Woolsey Fire to enter their property.

81. As a direct, proximate and substantial cause of the trespass, the Insureds suffered and will continue to suffer damages. As a result of the Insureds' damages, Underwriters made the Disbursements totaling no less than $2,481,971.15.

82. Underwriters, as subrogees of the Insureds, hereby demand an award in the amount of no less than $2,481,971.15.

**XIV.**

**SEVENTH CAUSE OF ACTION**

**(Private Nuisance, as to all Defendants)**

83. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained in paragraphs 1 through 82 above.

84. Defendants' actions, conduct, omissions, negligence, trespasses, and failures to act resulted in a fire hazard, specifically the Fire, that was an obstruction to the free use of the Insureds' property which invaded the right to use the Insureds' property.

85. The Woolsey Fire interfered with the free use and enjoyment of the Insureds' property, causing the Insureds unreasonable harm and substantial actual damages constituting a nuisance, pursuant to Civil Code §§ 3479 and 3481.

86. As a result of Defendants' actions and omissions, the Insureds suffered harm that is different from the type of harm suffered by the general public. Specifically, the Insureds have lost the occupancy, possession, use, and/or enjoyment of their land, real, and/or personal property, including but not limited to: a reasonable and rational fear that the area is still dangerous; a diminution in the fair market value of their property; an impairment of the salability of their property; and a lingering smell of smoke, and/or constant soot, ash, and/or dust in the air. To the

extent that the Insureds suffered such losses and Underwriters made payments for such losses, Underwriters are entitled to recover such amounts from Defendants.

87. Underwriters, as subrogees of the Insureds, hereby demand an award in the amount of no less than $2,481,971.15.

**XV.**

**EIGHTH CAUSE OF ACTION**

**(Premises Liability, as to Boeing and Does 1-50)**

88. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained in paragraphs 1 through 87 above.

89. Boeing, by its ownership, management and contractual obligations assumed and owed a non-delegable duty to the Insureds and others similarly situated to prevent any of the byproducts from the SSFL from escaping Boeing's property. Boeing owed a duty to provide fire suppression equipment and personnel at its SSFL property adequate to prevent fires from spreading outside of its property.

90. Boeing and Does 1-50 owed a duty to the Insureds and others similarly situated to warn them of potential hazards of their property and the likelihood that fires on the SSFL would be exacerbated, enhanced, and spread by substances in the soil, trees, and foliage and that the quick spread of the fire was likely to endanger properties in Ventura and Los Angeles Counties.

91. The Fire was the direct, legal, and proximate cause of Boeing's (a) failure to suppress the fire; (b) intentional direction to its fire department personnel to refrain from suppressing the fire or taking action to prevent the spread of the fire; (c) refraining from assisting the Ventura and Los Angeles fire departments as required by their cooperation, aid, and assistance agreements; and (d) other acts and omissions all of which constitute negligence.

92. As a further proximate result of Boeing's and Does 1-50's actions and omissions described herein, the Insureds lost their home, personal possessions, and had to relocate and evacuate, incurring expenses in the amount of $2,481,971.15.

93. Underwriters, as subrogees of the Insureds, hereby demand an award in the amount of no less than $2,481,971.15.

(iii) an award of attorneys' fees and cost of suit to the extent allowed by California law, including CCP § 1036;

(iv) an award of pre-judgment interest in accordance with Civil Code § 3287;

(v) an award of post-judgment interest in the maximum amount allowed by applicable law; and

(vi) such other and further relief at law or in equity as the Court may deem just and proper.

DATED: January 13, 2020

HIGGS FLETCHER & MACK LLP

By: ______________________
PAUL J. LEEDS, ESQ.
MAGGIE E. SCHROEDTER, ESQ.
JAMIE M. RITTERBECK, ESQ.
Attorneys for Plaintiff
CANOPIUS US INSURANCE, INC. as subrogee of Anil Guram, Mohammed Abu-Gheida, Elliot Glusker, Tracey Birdsall, Adam Peters and Brian and Peggy Moreno

# EXHIBIT 1

2044

BLAIR

A CALIFORNIA CORPORATION
CANOPIUS LSI 1291

Wells Fargo Bank, N.A.
California

16-24/1220

02/06/2019

PAY TO THE ORDER OF Timothy McPartlin, Joanna McPartlin, 5250 Horizon, LLC, McPartlin Family Trust, The Greenspan Co./Adjusters International and UBS Bank, USA $ **2,040,000.00

Two Million Forty Thousand Only*** DOLLARS

Security features. Details on back.

MEMO

AUTHORIZED SIGNATURE

BLAIR AND COMPANY
A CALIFORNIA CORPORATION • CANOPIUS LSI 1291

2044

Check No: 2044
Rec ID: 344274
Program: Canopius-LSI1291

BLAIR AND COMPANY
A CALIFORNIA CORPORATION • CANOPIUS LSI 1291

2044

PRODUCT SSLT103 USE WITH 91693 ENVELOPE Deluxe Corporation 1-800-328-0304 or www.deluxe.com/shop

4879709501
E9EA28 SLKDK03 03/15/2018 07:44 -208-

2057

BLAIR

A CALIFORNIA CORPORATION
CANOPIUS LSI 1291

Wells Fargo Bank, N.A.
California

16-24/1220

4/18/2019

PAY TO THE ORDER OF Timothy McPartlin, Joanna McPartlin, 5250 Horizon, LLC, McPartlin Family Trust & The Greenspan Co./Adjusters International

$ **150,000.00

One Hundred Fifty Thousand Only*** DOLLARS

Security features. Details on back.

AUTHORIZED SIGNATURE

MEMO Personal Property Settlement – Policy Limit

BLAIR AND COMPANY
A CALIFORNIA CORPORATION • CANOPIUS LSI 1291

2057

Check No: 2057
Rec ID: 348339
Program: Canopius-LSI 1291

BLAIR AND COMPANY
A CALIFORNIA CORPORATION • CANOPIUS LSI 1291

2057

PRODUCT SSLT103 USE WITH 91003 ENVELOPE Deluxe Corporation 1-800-328-0304 or www.deluxe.com/shop

4879709601
E9EA28 SLKDK03 03/15/2018 07:44 -195-

2070

BLAIR

A CALIFORNIA CORPORATION
CANOPIUS LSI 1291

Wells Fargo Bank, N.A.
California

16-24/1220

06/19/2019

PAY TO THE ORDER OF Timothy McPartlin, Joanna McPartlin, 5250 Horizon, LLC, McPartlin Family Trust & The Greenspan Co./Adjusters International $ **208,600.00

Two Hundred Eight Thousand Six Hundred Only*** DOLLARS

Security features. Details on back.

AUTHORIZED SIGNATURE

MEMO Loss of Use/Rents – Incurred + Anticipated through Dec. 2019

BLAIR AND COMPANY
A CALIFORNIA CORPORATION • CANOPIUS LSI 1291

2070

Check No: 2070
Rec ID: 352110
Program: Canopius-LSI1291

BLAIR AND COMPANY
A CALIFORNIA CORPORATION • CANOPIUS LSI 1291

2070

PRODUCT SSLT103 USE WITH 91603 ENVELOPE Deluxe Corporation 1-800-328-0304 or www.deluxe.com/shop

4879709501

E9EA28 SLKDK03 03/15/2018 07 44 -182-

# EXHIBIT 2

2038

BLAIR

A CALIFORNIA CORPORATION
CANOPIUS LSI 1291

Wells Fargo Bank, N.A.
California

16-24/1220

01/15/2019

PAY TO THE ORDER OF Makan Delrahim, Michelle Kahenzadeh & Wells Fargo Bank NA #936 ISAOA $ **83,371.15

Eighty-Three Thousand Three Hundred Seventy-One and 15/100*** DOLLARS

Security features. Details on back.

AUTHORIZED SIGNATURE

MEMO

BLAIR AND COMPANY
A CALIFORNIA CORPORATION • CANOPIUS LSI 1291

2038

Check No: 2038
Rec ID: 342081
Program: Canopius-LSI1291

BLAIR AND COMPANY
A CALIFORNIA CORPORATION • CANOPIUS LSI 1291

2038

PRODUCT SSLF103 USE WITH 91663 ENVELOPE Deluxe Corporation 1-800-328-0304 or www.deluxe.com/shop

4879709501
E9EA28 SLKDK03 03/15/2018 07:44 -214-